# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | |
|---|---|
| **WASEEM DAKER,** | |
| *Plaintiff,* | **CIVIL ACTION NO.** |
| **v.** | **5:18-cv-245-TES-CHW** |
| **Commissioner GREGORY DOZIER,** *et al.,* | |
| *Defendants.* | |

## ORDER

Plaintiff Waseem Daker, a prisoner who is presently incarcerated at Valdosta State Prison in Valdosta, Georgia, has filed a *pro se* Complaint [Doc. 1] seeking relief pursuant to 42 U.S.C. § 1983. Plaintiff also seeks leave to proceed *in forma pauperis* [Doc. 2]. In addition, Plaintiff has filed (1) three motions seeking recusal of the judges assigned to this case, [Docs. 5, 6, 9]; (2) two motions to expedite the preliminary screening of this case, [Docs. 7, 12]; (3) an emergency motion for a preliminary injunction [Doc. 8]; and (4) a motion for preliminary injunction or temporary restraining order [Doc. 10]. For the following reasons, Plaintiff's recusal motions are **DENIED**, and the Court finds that Plaintiff has three strikes under the Prison Litigation Reform Act, so he may not proceed *in forma pauperis*. Accordingly, the Court **DENIES** Plaintiff leave to proceed *in forma pauperis*, and **DISMISSES** this action **without prejudice**. Plaintiff's remaining motions are **DENIED as moot**.

## I. <u>Motions for Recusal [Docs. 5, 6, 9]</u>

Plaintiff has filed three motions seeking the recusal of Magistrate Judge Charles H. Weigle and in the second motion [Doc. 6], sought the recusal of the undersigned. As has been Plaintiff's custom, these motions are duplicative, and Plaintiff appears to be filing them as a matter of course in his cases. An identical copy of one of these motions [Doc. 6] was also filed in Case Number 5:15-cv-88; an identical copy of another one of these motions [Doc.9] was also filed in Case Number 5:14-cv-138; and it appears Plaintiff has also simply recycled portions of previous recusal motions filed in other courts, referring to other judges, and has re-submitted them in this case. *See, e.g.*, [Doc. 5 at p. 4 ("Magistrate Smith has . . ." and "Judge Story has . . .")].

In Plaintiff's first motion, he primarily repeats his allegations that Magistrate Judge Weigle has displayed "pervasive bias and prejudice" by ruling against Plaintiff on claims that have been allowed to proceed in other cases. [Doc. 5 at pp. 4–6]. In his second motion, Plaintiff repeats his prior allegations that the judges involved in his cases "display a deep-seated favoritism or antagonism that would make fair judgment impossible." *See* [Doc. 6 at p. 8]. Plaintiff also repeats nearly verbatim arguments made in his objections and his motion for reconsideration in Case Number 5:15-cv-88 and contends that the allegedly incorrect rulings on those issues demonstrate the Court's "bias, prejudice, hostility, and antagonism against Mr. Daker." [*Id.* at p. 22]. In his third motion, Plaintiff contends that Magistrate Judge Weigle should recuse himself because

he is "ghost-writing" orders for district judges rather than entering recommendations to which Plaintiff would have an opportunity to object. *See* [Doc. 9 at pp. 2–4]. Plaintiff also repeats his allegations that Magistrate Judge Weigle has "demonstrate[ed] bias, prejudice, hostility, and antagonism" towards Plaintiff in this case and that he has "discriminat[ed] against Plaintiff in comparison with other similarly situated prisoners." [*Id.* at p. 9].

Plaintiff bases his motions on 28 U.S.C. § 455. The statute generally provides that a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). The statute also enumerates certain other circumstances requiring a judge to disqualify himself. 28 U.S.C. § 455(b)(1)–(5). In essence, Plaintiff's primary complaint is that the Court is biased towards him. Plaintiff may thus be relying on either subsection (a) or subsection (b)(1).

The standard under subsection (a) is objective and requires the Court to ask "whether an objective, disinterested lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain significant doubt about the judge's impartiality." *United States v. Patti*, 337 F.3d 1317, 1321 (11th Cir. 2003) (internal quotation marks omitted). In the Eleventh Circuit, "it is well settled that the allegation of bias must show that the bias is personal as distinguished from judicial in nature." *Bolin v. Story*, 225 F.3d 1234, 1239 (11th Cir. 2000) (internal quotation marks and citation omitted) (per curiam). As a result, "a judge's rulings in the same or a related case are not

a sufficient basis for recusal," except in rare circumstances where the previous proceedings demonstrate pervasive bias and prejudice. *Id.*; *see also Liteky v. United States*, 510 U.S. 540, 555 (1994) ("[J]udicial rulings alone almost never constitute [a] valid basis for a bias or partiality recusal motion."); *McWhorter v. City of Birmingham*, 906 F.2d 674, 678 (11th Cir. 1990) ("[The bias] must derive from something other than that which the judge learned by participating in the case."). In this case, Plaintiff has not pointed to any specific facts showing that any sort of extrajudicial bias existed, nor has Plaintiff demonstrated that the Court's rulings exhibit "such a high degree of . . . antagonism as to make fair judgment impossible" or that any judge involved in his cases in this district have a bias toward Plaintiff "so extreme as to display clear inability to render fair judgment." *See Liteky*, 510 U.S. at 551, 555. It is clear that "[r]epeated rulings against a litigant, no matter how erroneous and how vigorously and consistently expressed, are not a basis for disqualification of a judge on the grounds of bias and prejudice." *See Maret v. United States*, 332 F. Supp. 324, 326 (E.D. Mo. 1971). Plaintiff's contention that any judge who rules against him exhibits pervasive bias and prejudice is simply incorrect. Moreover, Plaintiff's theory that the Court is treating him differently than other *pro se* inmates making similar claims is undercut by Plaintiff's failure to differentiate between the procedural postures and the overall circumstances of the cases and litigants he is comparing.

Secondly, the standard under 28 U.S.C. § 455(b)(1) requires disqualification where the judge "has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding[.]" "Recusal under this subsection is mandatory, because 'the potential for conflicts of interest are readily apparent.'" *Patti*, 337 F.3d at 1321 (quoting *Murray v. Scott*, 253 F.3d 1308, 1312 (11th Cir. 2001)). Again, Plaintiff has failed to establish any personal or pervasive bias on the part of the undersigned or Magistrate Judge Weigle, and Plaintiff also fails to identify any specific "disputed evidentiary facts" of which the Court might have knowledge. Any knowledge gained through the course of a judicial proceeding is not a "disputed evidentiary fact" that requires recusal. *United States v. Bailey*, 175 F.3d 966, 969 (11th Cir. 1999) (per curiam). Instead, knowledge of disputed evidentiary facts must be gained through an extrajudicial source to warrant recusal. *See id.* Plaintiff has not asserted that such knowledge exists here.

In sum, Plaintiff's contentions that the undersigned and Magistrate Judge Weigle have not ruled in his favor are not alone sufficient to merit recusal, and Plaintiff has also failed to show that the Court harbors the type of pervasive bias or prejudice against Plaintiff that would otherwise require recusal. Thus, Plaintiff's motions for recusal [Docs. 5, 6, 9] are **DENIED.**

## II.  **Motion for Leave to Proceed** *in Forma Pauperis* **[Doc. 2]**

Plaintiff has sought leave to proceed *in forma pauperis* in this case. Federal law bars a prisoner from bringing a civil action in federal court *in forma pauperis*

> if [he] has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). This is known as the "three strikes provision." Under § 1915(g), a prisoner incurs a "strike" any time he has a federal lawsuit or appeal dismissed on the grounds that it is (1) frivolous, (2) malicious, or (3) fails to state a claim. *See Medberry v. Butler*, 185 F.3d 1189, 1192 (11th Cir. 1999); *see also Daker v. Comm'r, Ga. Dep't of Corr.*, 820 F.3d 1278, 1283–84 (11th Cir. 2016) (confirming that "these three grounds are the *only* grounds that can render a dismissal a strike"). Once a prisoner incurs three strikes, his ability to proceed *in forma pauperis* in federal court is greatly limited: leave to proceed *in forma pauperis* may not be granted unless the prisoner is under imminent danger of serious physical injury. *Medberry*, 185 F.3d at 1192.

A review of court records on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") database reveals that Plaintiff has filed multiple federal lawsuits and that at least three of his complaints or appeals have been dismissed as frivolous, malicious, or for failure to state a claim: *Daker v. Mokwa,* Order Denying Leave to Proceed IFP, ECF No. 2 in Case No. 2:14-cv-00395-UA-MRW (C.D. Cal. Feb. 4, 2014)

(denying leave to proceed *in forma pauperis* and dismissing case after conducting screening under 28 U.S.C. § 1915(e)(2)(B) and finding claims were frivolous and failed to state a claim upon which relief may be granted); *Daker v. Warren*, Order Dismissing Appeal, Case No. 13-11630 (11th Cir. Mar. 4, 2014) (three-judge panel dismissal of appeal on grounds that appeal was frivolous); Order Dismissing Appeal, *Daker v. Warden*, Case No. 15-13148 (11th Cir. May 26, 2016) (three-judge panel dismissing appeal as frivolous); Order Dismissing Appeal, *Daker v. Commissioner*, Case No. 15-11266 (11th Cir. Oct. 7, 2016) (three-judge panel dismissing appeal as frivolous); Order Dismissing Appeal, *Daker v. Ferrero*, Case No. 15-13176 (11th Cir. Nov. 3, 2016) (three-judge panel dismissing appeal as frivolous); Order Dismissing Appeal, *Daker v. Governor*, Case No. 15-13179 (11th Cir. Dec. 19, 2016) (three-judge panel dismissing appeal as frivolous). Plaintiff is accordingly barred from prosecuting this action *in forma pauperis* unless he is in imminent danger of serious physical injury. 28 U.S.C. § 1915(g).

To qualify for this exception, a prisoner must allege specific facts that describe an "ongoing serious physical injury," or "a pattern of misconduct evidencing the likelihood of imminent serious physical injury." *Sutton v. Dist. Attorney's Office*, 334 F. App'x 278, 279 (11th Cir. 2009) (per curiam) (internal quotation marks omitted). Complaints of past injuries are not sufficient. *See Medberry*, 185 F.3d at 1193. Vague and unsupported claims of possible dangers likewise do not suffice. *See White v. State of Colo.*, 157 F.3d 1226, 1231 (10th Cir. 1998). The exception to § 1915(g) is to be applied only in "genuine emergencies,"

when (1) "time is pressing," (2) the "threat or prison condition is real and proximate," and (3) the "potential consequence is serious physical injury." *Lewis v. Sullivan*, 279 F.3d 526, 531 (7th Cir. 2002).

Plaintiff in this case contends he is in imminent danger of serious physical injury because: (1) Defendants maintain an ongoing custom or policy of using unnecessary force to shave Plaintiff; (2) Defendants maintain an ongoing custom or policy of forcibly shaving Plaintiff with "unsanitized" clippers; (3) Defendants fail to provide Plaintiff with adequate food on Tier II; (4) Defendants fail to provide Plaintiff with adequate medical care on Tier II; (5) Defendants fail to provide Plaintiff with adequate dental care on Tier II; (6) Defendants fail to provide Plaintiff with reasonably adequate cell sanitation on Tier II; and (7) Defendants fail to provide Plaintiff with adequate outdoor recreation on Tier II. [Doc. 1-1 at pp. 50–51]. For the following reasons, the Court finds that Plaintiff has failed to sufficiently allege that these conditions place him in imminent danger of serious physical injury.

A.    Custom or Policy of Using Unnecessary Force

Plaintiff first contends that he is in imminent danger of serious physical injury because Defendants maintain an ongoing custom or policy of using excessive force to enforce compliance with the prison's grooming policy. [Doc. 1-1 at p. 50]. Plaintiff claims that he was forcibly shaven on nine occasions, causing injuries to his back and shoulders and nerve damage to his hands which required surgery to treat. [*Id.*]. Plaintiff further

contends that Defendants "maintain[] an ongoing threat to repeat" the forcible shavings in the future. [*Id.*].

Plaintiff altogether ignores the fact that his own actions created the situation that he now alleges placed him in imminent danger. As this Court has previously observed, Plaintiff could have avoided any use of force had he complied with the GDC's grooming policy. *See Daker v. Dozier*, No. 5:17-CV-0025-CAR, 2017 WL 3037420, at *6 (M.D. Ga. July 18, 2017) (noting that Plaintiff's "allegations . . . suggest that it was Plaintiff's repeated failure to follow instructions, not the GDC's policies, that created the dangerous situation that led to his injuries"). A number of courts have determined "that an inmate should not be able to consciously create the situation that places him in imminent danger." *Brown v. Wolf*, 705 F. App'x 63, 65 (3d Cir. 2017) (per curiam); *Brown v. City of Philadelphia*, CIV. A. 05-4160, 2009 WL 1011966, at *12 (E.D. Pa. Apr. 14, 2009) ("Plaintiff cannot claim 'imminent danger' as a mechanism for avoiding the three strikes rule when he is responsible for placing himself in a dangerous situation."); *Taylor v. Walker*, Civil No. 07-706-MJR, 2007 WL 4365718, at *2 (S.D. Ill. Dec. 11, 2007) (holding that prisoner "may not create the 'imminent danger' required by § 1915(g) by commencing a hunger strike"); *Wallace v. Cockrell*, No. 3:03-MC-98-K, 2003 WL 22961212, at *2 (N.D. Tex. Oct. 27, 2003) (rejecting prisoner's allegations that "he is in imminent danger because he has inflicted injuries upon himself and has been suicidal" because "[a] prisoner cannot create the imminent danger so as to escape the three strikes provision of the PLRA" (internal

quotation marks omitted)); *Bea v. Watson*, Civil Action No. 7:08-cv-00547, 2008 WL 4960424, at *1 (W.D. Va. Nov. 18, 2008) (agreeing with courts that have held that a prisoner cannot create the imminent danger that would allow him to escape the three strikes bar); *Muhammad v. McDonough*, No. 3:06-cv-527-J-32TEM, 2006 WL 1640128, at *1 n.1 (M.D. Fla. June 9, 2006) ("[I]t is clear that a prisoner cannot create the imminent danger so as to escape the three strikes provision of the PLRA. To hold otherwise would eviscerate the rule."). The danger about which Plaintiff complains simply cannot be "imminent" if Plaintiff has the power to avoid it by complying with regulation.

To be clear, this is not a case where the policy or regulation at issue is so clearly illegal "that disobedience might be allowable—e.g., an order to 'come over here so I can shoot you[.]" *Mauzey v. Kane*, C 05-5392MHP(PR), 2006 WL 778653, at *3 (N.D. Cal. Mar. 27, 2006). Plaintiff alludes to the Supreme Court's decision in *Holt v. Hobbs* as supportive of his contention that the GDC's current grooming policy violates RLUIPA. *See, e.g.,* [Doc. 1-1 at p. 8]. In *Holt*, the Supreme Court concluded that the Arkansas Department of Corrections' grooming policy violated RLUIPA to the extent that it prevented prisoners from growing half-inch beards in accordance with their religious beliefs. *Holt v. Hobbs*, 135 S. Ct. 853, 867 (2015). Although a prior version of the GDC's grooming policy required prisoners to be clean-shaven, Plaintiff indicates that the policy now permits inmates to wear half-inch beards, consistent with the *Holt* decision. *Compare* [Doc. 1-1 at p. 5 ("Prior to May 1, 2015, GDC policy required male prisoners to be clean-shaven and

prohibited all beards.")] *with* [Doc. 8 at p. 14 ("Growing a beard longer than half-inch is not an act that justifies tazing, spraying, nerve damage, back injury, shoulder injury, or other injuries on a prisoner."). While Plaintiff clearly prefers that he be allowed to wear a longer beard that he alleges would comport with his religious beliefs, Plaintiff has not alleged any facts suggesting that the GDC's current policy is so blatantly illegitimate that he should be permitted to ignore prison officials' orders to comply with that policy. *See* [Doc. 8 at p. 14 ("[Plaintiff] was confined in his cell with a beard, and Defendants could have (and should have) simply left him alone in his cell with a beard.")]. "Inmates are and must be required to obey orders. When an inmate refuse[s] to obey a proper order, he is attempting to assert his authority over a portion of the institution and its officials. Such refusal and denial of authority places the staff and other inmates in danger." *Soto v. Dickey*, 744 F.2d 1260, 1267 (7th Cir. 1984); *see also Mauzey*, 2006 WL 778653, at *3 ("Allowing inmates to pick and choose which orders to obey will quickly lead to complete chaos in the prison.").

Plaintiff also seems to suggest that any use of force to enforce the GDC's shaving policy is impermissible. *See* [Doc. 8 at p. 13 ("It is never necessary to forcefully remove a locked-down prisoner from a lock-down cell for the purpose of shaving him.")]. While it is clear that prison officials not are permitted to use *excessive* force to enforce grooming regulations, the Eleventh Circuit has observed that some use of force is permissible to enforce prison regulations. *Muhammad v. Sapp*, 494 F. App'x 953, 957 (11th Cir. 2012) (per

curiam) (holding that prison official "was authorized to use force to enforce the prison's shaving policy"). *Cf. also, e.g.*, *Robinson v. Lambert*, No. 18-11033, 2018 WL 5255238, at *3 (11th Cir. Oct. 22, 2018) (per curiam) (holding that officer "was warranted in using force given [plaintiff's] repeated refusal to obey commands to attend his first appearance").

These clarifications aside, however, the Court, at this time, does not have to reach the issue of whether the GDC's grooming policy violates Plaintiff's constitutional or statutory rights or whether the GDC used excessive force to shave Plaintiff. The only question now before the Court is whether the policy placed Plaintiff in imminent danger of serious physical injury. For the foregoing reasons, the Court finds it did not.

### B.    Custom or Policy of Using Unsanitary Clippers

Plaintiff next alleges that he is in imminent danger of serious physical injury because the clippers used in the forced shaving incidents are not properly sanitized, thus exposing Plaintiff to communicable diseases that are common in the prison population, such as HIV and Hepatitis.  [Doc. 1-1 at p. 50]. These allegations likewise fail to show that Plaintiff is in imminent danger of serious physical injury.

Plaintiff provides no factual support for his claims that the clippers used by the CERT team and/or the inmate barbers have not been sanitized in accordance with the policies and procedures Plaintiff acknowledges the GDC has in place.  *See, e.g.*, [Doc. 1-1 at p. 12 (describing GDC policies)]. Courts have advised Plaintiff that such "generalized and conclusory allegations that do not contain any specific facts that Plaintiff himself

actually faces a real threat of physical injury" will not suffice to bring Plaintiff within § 1915(g)'s imminent danger exception. *Daker v. Dozier*, Civil Action No. 6:17-cv-110, 2017 WL 4448234, at *5 (S.D. Ga. Oct. 5, 2017) (noting that Plaintiff "does not explain what he means by" the term "unsanitized" or provide any "specifics regarding the frequency with which the clippers are used," among other things); *Daker v. Robinson*, Civil Action No. 1:16-CV-3917-RWS-JSA, 2016 WL 10720884, at *2 (N.D. Ga. Dec. 1, 2016) (finding that "any future risk of HIV, Hepatitis or other infectious diseases that [Plaintiff] argues could potentially result from the alleged unsanitized clippers is far to[o] speculative to satisfy § 1915(g)'s imminent danger exception"); *Daker v. Dozier*, Civil No. 5:17-CV-0025-CAR, 2017 WL 3037420, at *5 (M.D. Ga. July 18, 2017) (finding that Plaintiff's contention that "he is in imminent danger due to the GDC's custom of supplying prisoners with damaged, unsanitary clippers to enforce its shaving policy" was insufficient to overcome § 1915(g) bar where "Plaintiff has faced this same 'danger' since 2012, and he does not now identify any presently occurring circumstance to suggest that this possible or potential danger is any more imminent now than it was in 2012"). *Cf. also DeBlasio v. Johnson*, 128 F. Supp. 2d 315, 331 (E.D. Va. 2000) (finding no Eighth Amendment violation where prison barbers allegedly failed to properly sanitize equipment, thus exposing prisoners to hepatitis, because plaintiffs failed to "articulate any excessive risk that is so shocking or barbarous as to violate the Constitution"), *aff'd*, 13 F. App'x 96 (4th Cir. 2001); *Williams v. Lackawanna Cnty. Prison*, No. 4:CV-07-1137, 2010 WL 1491132, at *7 (M.D. Pa.

Apr. 13, 2010) (finding that prisoner's allegations that prison officials supply thirty inmates with only one razor that is not sanitized between uses fails to state an Eighth Amendment claim because prisoner "failed to properly allege the existence of any 'substantial risk of serious harm'"); *Ashann-Ra v. Com. of Va.*, 112 F. Supp. 2d 559, 573 (W.D. Va. 2000) (finding no Eighth Amendment violation where prisoner alleged that inmate barbers failed to properly sanitize equipment between uses because he "fail[ed] to demonstrate any substantial risk of serious harm, or future harm, resulting from his exposure to unsanitary clippers or razors").  In addition, as noted above, it appears Plaintiff could avoid being forcibly shaven at all if he would voluntarily comply with the prison's grooming policy. Therefore, the Court concludes that Plaintiff's conclusory allegation regarding the use of "unsanitized" clippers fails to demonstrate that Plaintiff is in imminent danger of serious physical injury.

C.     Failure to Provide Adequate Food

Plaintiff next alleges that Defendants' failure to provide him with adequate food while housed in Tier II segregation causes him to be in imminent danger of serious physical injury. Although Plaintiff states that he lost 38 pounds in four months when he was initially placed on lockdown, this weight loss occurred more than two years ago. [Doc. 1-1 at p. 32]. Plaintiff further acknowledges that he was subsequently placed on a "medically prescribed special diet . . . to prevent further weight loss." [*Id.*]. Plaintiff does not state that his rapid weight loss continued after being placed on this diet or that he

suffered any harm as a result. *See* [*id.*]. Plaintiff also contends that he has "now been *thrice* diagnosed with sinus infections." *See* [*id.* at pp. 32–33]. Plaintiff attributes his sinus problems to "the lack of Vitamin C" in the food and beverages provided on Tier II, but he provides no factual support for that conclusory statement and acknowledges that prison officials treated the sinus infections by prescribing antibiotics. *See* [*id.*]. Accordingly, Plaintiff has failed to plausibly allege that he is in imminent danger of serious physical injury due to the food quantity or quality on Tier II. *See also Daker v. Dozier*, Civil Action No. 6:17-cv-110, 2018 WL 582581, at *3 (S.D. Ga. Jan. 29, 2018) (noting that "[w]hile inadequate food provisions . . . could possibly meet the imminent danger exception, the Court does not find Plaintiff's conclusory allegations in this respect credible or factually plausible").

### D.    Failure to Provide Adequate Medical Care

Plaintiff next contends that Defendants have failed to provide him with adequate medical care while on Tier II. Plaintiff alleges that Defendants delayed taking him to a follow-up appointment for surgery performed on his wrist due to nerve damage; he contends that "[a]s a result, Plaintiff had his stitches, splint/partial cast—and was largely unable to use his hand—for three (3) weeks longer than ordered by the surgeon." [Doc. 1-1 at p. 33]. Plaintiff further alleges that since his transfer to Macon State Prison ("MSP") on April 19, 2018, he has submitted medical requests on approximately 17 different occasions "requesting to see a medical provider for conditions such as back pain,

shoulder pain, knee pain, nerve damage in his hands, pain in his hand that had surgery, and a crushed toe," among other conditions, and that he requested HIV and hepatitis tests after being forcibly shaven with "unsanitized" clippers on June 13, 2018, but "has not been seen by a provider in response to any of his requests." [*Id.* at pp. 33–34].

These conclusory allegations also fail to establish that Plaintiff is in imminent danger of any serious injury. The Eleventh Circuit has held that a prisoner who alleges a "'total' lack of treatment" for "serious diseases" that caused "'severe ongoing complications'" may be "sufficient to satisfy the imminent-danger exception." *Mitchell v. Nobles*, 873 F.3d 869, 874 (11th Cir. 2017) (quoting *Brown v. Johnson*, 387 F.3d 1344, 1350 (11th Cir. 2004)). Plaintiff acknowledges in his Complaint that he was, in fact, provided with medical treatment for nerve damage and the pain in his hand in the form of a follow-up appointment with the surgeon that performed the surgery to correct this injury, and he does not allege that any delay in having his stitches or splint removed caused him any lasting harm. *See* [Doc. 1-1 at p. 33]. As noted above, Plaintiff also acknowledges receiving medical attention for his sinus problems. While Plaintiff has perhaps alleged that he has not received any medical treatment for other conditions that ail him, he has not alleged any facts suggesting that these conditions are serious or that he suffers from *severe* ongoing complications as a result of the lack of treatment. *See White,* 157 F.3d at 1231–32 (imminent danger not found despite plaintiff's claim that he "ha[s] been deprived of life sustaining medication and medical attention/treatment, ha[s] been beaten, and/or

otherwise tortured and allowed to suffer great pain, so that [his] health degenerated to a[n] extremely life-threatening degree," due to lack of specificity regarding the asserted "serious physical injury" (alterations in original) (internal quotation marks omitted)); *Ball v. Famiglio*, 726 F.3d 448, 468 (3d Cir. 2013) (holding that "even if poor care for [prisoner's] past injuries, her eyesight, or her arthritis may prove detrimental to [prisoner's] health over time, they do not represent imminent dangers which are about to occur at any moment or are impending" (internal quotation marks omitted)), *abrogated in part on other grounds by Coleman v. Tollefson*, 135 S. Ct. 1759 (2015). Accordingly, Plaintiff's claims that Defendants have not responded to his medical requests also fail to establish that Plaintiff is in imminent danger of serious physical injury.

E.      Failure to Provide Adequate Dental Care

Plaintiff next alleges that he is in imminent danger of serious physical injury because he has been denied adequate dental care. Plaintiff contends that since his transfer to MSP, he has submitted three medical requests "to see the dentist for toothaches, dental pain, and sensitivity, but has not been seen by the dentist." [Doc. 1-1 at p. 34]. Plaintiff further alleges that a dentist recommended Sensodyne toothpaste for sensitivity but that he cannot obtain Sensodyne from the prison store and Defendants will not "order or prescribe Sensodyne to treat Plaintiff's toothaches and hypersensitivity." [*Id.*].

Plaintiff's conclusory statement that he experienced some dental pain and sensitivity, standing alone, does not show that he was in imminent danger of serious

physical injury at the time he filed his Complaint in this case. *Compare, e.g.*, *Partee v. Connolly*, No. 08 Civ. 4007 (NRB), 2009 WL 1788375, at *3 (S.D.N.Y. June 23, 2009) (conclusory allegations of ongoing dental issues including "extreme pain, loss of teeth, discomfort, infection and life threaten[ing] complications" insufficient to demonstrate imminent danger of serious physical injury (internal quotation marks omitted)), *and Daker v. McLaughlin*, Case No. 5:18-cv-00171-MTT-CHW, 2018 WL 3463271, at *5 (M.D. Ga. July 18, 2018) (finding that "allegations of sensitive teeth . . . are insufficient to show that Petitioner is in an imminent danger of serious physical injury") *with McAlphin v. Toney*, 281 F.3d 709, 710–11 (8th Cir. 2002) (prisoner who alleged delay of numerous tooth extractions causing an infection to spread in his mouth demonstrated he was in imminent danger of serious physical injury; pain was so significant that prisoner attempted suicide). Plaintiff also acknowledges that the dentist offered to extract the teeth that were bothering him, but Plaintiff apparently refused. [Doc. 1-1 at p. 34]. Plaintiff has therefore failed to establish that the alleged lack of dental care places him in imminent danger of serious physical injury.

### F. Failure to Provide Adequate Sanitation

Plaintiff next contends that there is a "rampant problem" on Tier II "with some prisoners who project feces, urine, or mixtures of the two onto staff, other prisoners, or other prisoners' cell doors, or even just out into the dorms, or at yard[.]" [Doc. 1-1 at p. 35]. Plaintiff contends that as a result of these "projectors," prisoners in the Tier II dorms

"are commonly exposed to an-almost constant stench of feces in the dorm and the concomitant health risks." [*Id.* at p. 35]. Plaintiff also contends that prison staff will not enter the Tier II dorm after a projection incident, and therefore Tier II prisoners sometimes do not receive their medication or may not have the ability to submit grievance or other forms. [*Id.*].

Plaintiff further contends that "GDC officials also do not provide cell sanitation on Tier II[.]" [*Id.* at p. 36]. Plaintiff alleges that since he has arrived at MSP, "GDC officials have provided only disinfectant spray, without providing [a] broom, dustpan, or mop, liquid bleach, powdered bleach, or any other cleaning supplies." [*Id.*]. Plaintiff further states that his cell "was filthy and full of trash left behind by the previous occupants, but Plaintiff was never provided any cleaning supplies with which to clean the cells." [*Id.* at pp. 36–37]. Plaintiff also asserts that since his placement on Tier II, he has "been diagnosed with numerous allergy problems which required being prescribed medications, such as Claritin, chlortrimeton, Zyrtec, decadrone, and Nasacort, to treat as a result of exposure to feces" and that he is in imminent danger of "future infection." [*Id.* at pp. 37, 51].

These allegations likewise fail to establish that Plaintiff is in imminent danger of serious physical injury. Plaintiff does not allege that he personally was denied any medication because nursing staff refused to enter the dorm after a projection incident. Plaintiff further acknowledges that prison officials have treated the allergy and sinus

problems that Plaintiff attributes (again, without any factual basis therefor) to his exposure to feces. In addition, while Plaintiff has not been provided with cleaning tools such as mops or bleach, he acknowledges that he has been provided with disinfectant spray. [Doc. 1-1 at p. 36]. Plaintiff has been previously advised that such allegations are insufficient to establish an imminent danger of serious physical injury. *See, e.g., Daker*, 2018 WL 582581, at *3 (allegations that Plaintiff was subjected to "unsanitary prison conditions" were insufficient to establish an "imminent, serious danger"); *Daker v. Dozier*, Civil No. 5:17-CV-0025-CAR, 2017 WL 3037420, at *5, 6 (M.D. Ga. July 18, 2017) (allegations that Plaintiff and that prisoner was housed with inmates who threw feces and not provided with adequate cleaning supplies were insufficient to demonstrate that prisoner was in imminent danger of serious physical injury).

Other courts have also found that mere exposure to unsanitary conditions fails to demonstrate an imminent danger of serious physical injury. *See, e.g., Ball v. Allen*, Civil Action No. 06-0496-CG-M, 2007 WL 484547, at *2–3 (S.D. Ala. Feb. 8, 2007) (allegations that prisoner was not permitted to regularly clean and sanitize cell, creating "unsanitary living environment" subjecting prisoner "to germs and diseases daily" and that prisoner "receives inadequate, unsanitary, and contaminated food and beverages," among other things, insufficient to show imminent danger (internal quotation marks omitted)); *Cook v. Standley*, No. 10-3183, 2010 WL 3433060, at *2 (C.D. Ill. Aug. 26, 2010) (finding that "having feces and spit thrown on you as you walk down the gallery under the escort of

correctional officers does not qualify as imminent danger within the meaning of [§ 1915(g)]"); *Pettus v. Oakes*, Nos. 09-CV-6263CJS, 09-CV-6272CJS, 2009 WL 2392025, at *2 n.1 (W.D.N.Y. Aug. 3, 2009) (noting that prisoner's "allegations regarding feces and urine being thrown at him . . . would not implicate an imminent danger of serious harm, such that plaintiff would be allowed to bring them in an action allowed under the exception to 28 U.S.C. § 1915(g)"). In light of the foregoing, Plaintiff's allegations concerning cell sanitation also fail to establish that Plaintiff is in imminent danger of serious physical injury.

### G. Failure to Provide Adequate Outdoor Recreation

Finally, Plaintiff alleges that he is in imminent danger of serious physical injury because he has been denied the ability to exercise outdoors on Tier II. [Doc. 1-1 at p. 51]. Plaintiff contends that between his transfer to MSP on April 19, 2018, and the date he filed his Complaint, June 24, 2018, he "has only had opportunities for outside recreation on two occasions." [*Id.* at p. 38]. Beyond this conclusory statement, however, Plaintiff does not explain exactly how the denial of outdoor recreation places him in imminent danger of serious physical injury. Again, Plaintiff has previously been advised that conclusory and factually unsupported allegations of this nature are not sufficient to establish that he should be excepted from the § 1915(g) bar. *See Daker*, 2017 WL 3037420, at *6 (finding that Plaintiff's complaint failed to suggest "that Plaintiff will soon suffer a serious physical injury if he is not promptly allowed yard privileges"). Other courts have also found that

21

the denial of outdoor exercise, without more, fails to show an imminent danger of serious physical injury. *See, e.g., Richardson v. Dr. Gessner Primecare Medical, Inc.*, Civil Action No. 16-5461, 2016 WL 6609181, at *2 (E.D. Pa. Nov. 7, 2016) (finding that prisoner's allegations that physician's "medical restriction prevents him from getting fresh air and outdoor exercise" was insufficient to establish imminent danger of serious physical injury where "[e]ven if plaintiff is prevented from going outside, he does not allege that he cannot exercise at all or that the air in the prison is somehow contaminated" or that "the absence of fresh air or exercise is affecting plaintiff physically"); *see also, e.g., Jones v. Diamond*, 594 F.2d 997, 1013 (5th Cir. 1979), *on reh'g*, 636 F.2d 1364 (5th Cir. 1981) ("Our cases have never held that convicted prisoners have a constitutional right to outdoor exercise."). Plaintiff's allegation that he has been denied outdoor exercise since he has been housed at MSP also fails to establish that he is in imminent danger of serious physical injury.

### III.  Conclusion

The Court certainly does not condone any use of excessive force or other unconstitutional mistreatment of prisoners, even when prisoners refuse to submit to prison regulations. As Plaintiff has been previously advised, it is possible that he raises some colorable claims concerning Defendants' alleged actions or the conditions of his confinement. *See Daker*, 2017 WL 3037420, at *6. Nevertheless, the question the Court must resolve at this time is not whether Plaintiff has potentially asserted actionable claims against Defendants, but whether Plaintiff—a litigant who has previously abused the

privilege of proceeding *in forma pauperis*—is in imminent danger of serious physical injury and should therefore be permitted to proceed *in forma pauperis* in this matter.

For the foregoing reasons, the Court finds Plaintiff may not. Accordingly, Plaintiff's motion to proceed *in forma pauperis* [Doc. 2] is **DENIED,** and this action is **DISMISSED without prejudice**. If Plaintiff wishes to bring a new civil rights action, he may do so by submitting a new complaint form and the full filing fee.  Finally, as discussed above, Plaintiff's recusal motions [Docs. 5, 6,[1] 9] are **DENIED**, and Plaintiff's remaining pending motions [Docs. 7, 8, 10, 12] are **DENIED as moot.**

**SO ORDERED**, this 21st day of February, 2019.

S/ Tilman E. Self, III
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**

---

[1] Plaintiff's second recusal motion [Doc. 6], also seeks permission to exceed any page or type-size limitations. In light of the Court's ruling in this Order, this requested relief is **TERMINATED as moot**, and the Court reminds Plaintiff of his obligation under this court's local rules to timely request any leave to exceed the page limits *before* filing his motions or responses.