IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| WASEEM DAKER,<br><br>*Plaintiff*,<br><br>v.<br><br>Commissioner GREGORY DOZIER, *et al.*,<br><br>*Defendants*. | CIVIL ACTION NO.<br>5:18-cv-00245-TES-CHW |

### ORDER DENYING PLAINTIFF'S MOTION TO VACATE

Pending before the Court is *pro se* Plaintiff Waseem Daker's Motion to Vacate [Doc. 20] the Court's pervious Order [Doc. 13] which, among other things, denied Plaintiff's Motion for Leave to Proceed *In Forma Pauperis* ("IFP Motion") [Doc. 2] and dismissed Plaintiff's case without prejudice. For the following reasons, the Court **DENIES** Plaintiff's Motion.

### DISCUSSION

A. <u>Standard of Review</u>

Plaintiff filed this Motion pursuant to Federal Rule of Civil Procedure 59(e). As the Court previously advised Plaintiff, "'motions for reconsideration are disfavored'" and "'relief under Rule 59(e) is an extraordinary remedy to be employed sparingly.'" *Mercer v. Perdue Farms, Inc.*, No. 5:10-cv-324 (CAR), 2012 WL 1414321, at *1 (M.D. Ga. Apr. 20, 2012) (quoting *Krstic v. Princess Cruise Lines, Ltd.*, 706 F. Supp. 2d 1271, 1282 (S.D. Fla.

2010)); *see also Daker v. Dozier*, No. 5:17-cv-25 (CAR), 2017 WL 4797522 at *1 (M.D. Ga. Oct. 24, 2017) (holding same). Furthermore, Rule 59(e) "cannot serve as a vehicle to relitigate old matters or present the case under a new legal theory . . . [or] give the moving party another 'bite at the apple' by permitting the arguing of issues and procedures that could and should have been raised prior to judgment." *Daker*, 2017 WL 4797522, at *1 (internal quotation marks omitted) (alterations in original). The Court recognizes only three circumstances that warrant reconsideration of a prior order under Rule 59(e): "(1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or manifest injustice." *Daker v. Humphrey*, No. 5:12-CV-461 (CAR), 2013 WL 1296501, at *2 n.1 (M.D. Ga. Mar. 27, 2013) (quoting *Fla. College of Osteopathic Med., Inc. v. Dean Witter*, 12 F. Supp. 2d 1306, 1308 (M.D. Fla. 1998)).

    B.    <u>**Plaintiff's Motion**</u>

Plaintiff contends that the Court erred when it determined that he was not entitled to proceed *in forma pauperis* because he failed to demonstrate that he was in imminent danger of serious physical injury for purposes of 28 U.S.C. § 1915(g). Plaintiff has not identified any intervening change in the law or new evidence that affects his claims. Thus, the Court presumes that Plaintiff's Motion is based on his belief that there is a need for the Court to correct clear errors or manifest injustice in this case.

1. <u>Reconsideration is Unnecessary to Prevent a Manifest Injustice</u>

As a preliminary matter, it is unclear to the Court why Plaintiff continues to seek leave to proceed *in forma pauperis* in this case. Plaintiff acknowledges in recently-filed affidavits to proceed *in forma pauperis* that he sold his home in August of 2018 and has approximately $36,000.00 in his checking and savings accounts as a result. *See, e.g., Daker v. Head*, Mot. Proceed IFP 3, ECF No. 35 in No. 5:14-cv-00138-MTT-CHW (M.D. Ga. Mar. 5, 2019). Plaintiff has paid thousands of dollars in filing fees in recent months from the proceeds of this sale. *See, e.g., Daker v. Owens*, No. 5:12-cv-00459-CAR-MSH (M.D. Ga. Nov. 20, 2012) ($505.00 appeal fee paid on June 10, 2019); *Daker v. Ward*, No. 5:19-cv-00126-MTT-CHW (M.D. Ga. Apr. 8, 2019) ($400.00 filing fee paid at filing); *Nolley v. McLaughlin*, No. 5:15-cv-00149-TES-CHW (M.D. Ga. Apr. 27, 2015) ($505.00 appeal fee paid on Feb. 7, 2019 regarding Plaintiff's motion to intervene); *Daker v. Jackson*, Appeal No. 18-11989 (11th Cir. May 9, 2018) ($505.00 appeal fee paid on Jan. 30, 2019); *Daker v. USA*, Appeal No. 17-15629 (11th Cir. Dec. 18, 2017) ($505.00 filing fee paid Jan. 28, 2019); *Daker v. Owens*, No. 5:12-cv-00459-CAR-MSH (M.D. Ga. Nov. 20, 2012) ($4.00 partial appeal fee paid on Jan. 4, 2019); *Daker v. USA,* Appeal No. 18-11383 (11th Cir. Apr. 3, 2018) ($505.00 appeal fee paid on November 30, 2018); *Daker v. Deal*, No. 1:18-cv-05243-WMR-CMS (N.D. Ga. Nov. 13, 2018) ($400.00 filing fee paid at filing); *Smith v. Owens*, No. 5:12-cv-00026-WLS-CHW (M.D. Ga. Jan. 24, 2012) ($505.00 appeal fee paid on Sept. 4, 2018 with check

listing Plaintiff as account holder, *see* ECF No. 215).[1] The Order for which Plaintiff seeks reconsideration in this case merely found that Plaintiff was not entitled to proceed *in forma pauperis* and dismissed Plaintiff's Complaint without prejudice to his refiling the Complaint accompanied by the appropriate filing fee. Plaintiff appears to have ample resources to pay this fee. Plaintiff does not assert that the statute of limitations could bar any of his claims if he is required to refile, and the Court cannot conceive of any other prejudice Plaintiff would experience if he does so. Frankly, Plaintiff's filing of a motion for reconsideration in which he presses his position that he needs to avail himself of the § 1915(g) exception because of his indigence does not appear to be made in good faith given Plaintiff's current financial status. At the very least, the Court finds that Plaintiff would not suffer a manifest injustice if he is required to refile this case and pay a fee that he can obviously pay if he so chooses. The Court is therefore not compelled to reconsider its previous Order filed on February 21, 2019, on the basis that its ruling could work a manifest injustice.

2. Reconsideration is Unnecessary to Correct Clear Error

Plaintiff has also failed to show that reconsideration is warranted because the Court needs to correct clear errors. Plaintiff contends that he is presently in imminent danger of serious physical injury due to Defendants' customs and policies of (1) using excessive force to enforce the Georgia Department of Correction's ("GDC") grooming

---

[1] This is not an exhaustive list of the filing fees paid by Plaintiff.

4

policy and (2) requiring prisoners to shave (or be forcibly shaven) with clippers that are not properly sanitized.[2] Neither of these contentions support reconsideration of the Court's previous ruling that Plaintiff is not entitled to the § 1915(g) exception.

> a. *Prison Officials' Custom of Using Force to Enforce the Grooming Policy Does Not Place Plaintiff in Imminent Danger of Serious Physical Injury*

First, Plaintiff contends that it was Defendants' custom, policy, or practice of forcibly shaving inmates—rather than his own refusal to comply with Defendants' orders to shave—that placed him in imminent danger of serious physical injury. The Court previously found that Defendants' policy of using excessive force to shave prisoners could not place Plaintiff in imminent danger because Plaintiff can avoid the application of any force at all if he voluntarily shaves himself. To reverse course on this conclusion would require the Court to accept Plaintiff's arguments that (1) the GDC's grooming policy is so obviously unlawful that his refusal to comply with it is justified and (2) the use of *any* force to compel compliance with the grooming policy is unnecessary and therefore excessive. *See, e.g.*, [Doc. 20 at pp. 10–11 (contending that prison officials should have left "him alone in his cell, with or without a beard" and that "[i]t is *never* necessary to forcefully remove a locked-down prisoner from a lock-down cell for the purpose of

---

[2] In his motion to vacate, Plaintiff does not contend that he is in imminent danger of serious physical injury due to the alleged denial of adequate food, medical care, dental care, cell sanitation, or outdoor recreation. *See* Mot. Vacate 8, 21, ECF No. 20. The Court therefore declines to reconsider its prior rulings on these issues.

5

shaving him" (emphasis in original))]. The fact remains, however, that the GDC's grooming policy has not yet been found to be unlawful,[3] and the Eleventh Circuit has indicated that the use of some force to compel compliance with a presumably lawful grooming policy is justifiable. *See* [Doc. 13 at pp. 9–10 (citing, e.g., *Muhammad v. Sapp*, 494 F. App'x 953, 957 (11th Cir. 2012) (per curiam) (holding that prison official "was authorized to use force to enforce the prison's shaving policy"))]. It is therefore evident that any "ongoing danger" caused by the use of force to compel compliance with the grooming policy is (1) caused by Plaintiff's own actions and (2) simply not "imminent."[4]

The Court emphasizes that, contrary to Plaintiff's assertions, it has not reached the merits of Plaintiff's claims that Defendants violated his constitutional or statutory rights, and nothing in its Orders should be construed as condoning the use of *excessive* force or other unconstitutional action to enforce prison policies. *See* [Doc. 20 at p. 15 ("The district court appears to assume that because the GDC grooming Rule prohibits long beards,

---

[3] Plaintiff appears to allege that the Court erred by failing "to cite or acknowledge the Eleventh Circuit decision in *Smith v. Owens*, 848 F.3d 975 (11th Cir. 2017)[.]" [Doc. 20 at p. 8]. It is unclear why Plaintiff believes this failure was erroneous. *Smith* does not resolve the question of whether the GDC's grooming policy is lawful. Instead, the Eleventh Circuit merely remanded the case back to the district court so that it could assess the GDC's policy in accordance with the standard articulated in Supreme Court's intervening decision in *Holt v. Hobbs*, 135 S. Ct. 853 (2015). *Smith v. Owens*, 848 F.3d 975, 981 (11th Cir. 2017).

[4] The Court also notes that in his Rule 59(e) motion, Plaintiff acknowledges that he benefits from "<u>not</u> complying with the shaving rule," because if he is forcibly shaven, Defendants must videotape the incident. [Doc. 20 at p. 23] (emphasis in original). Thus, Plaintiff alleges, "if he contracts a disease and sues prison officials," the videotape will serve as proof that prison officials did not sanitize clippers prior to the forcible shaving incident. [*Id.*]. This suggestion that Plaintiff's failure to comply with prison policy may have constituted or will constitute a tactical decision bolsters the Court's previous conclusion that Plaintiff has (and had) the ability to avoid being forcibly shaven and any accompanying injury.

anything and everything is acceptable in the way of enforcement[,]" including "beating, tazing, pepper-spraying" and other types of force as well as exposing prisoners to the risk of disease or "denying non-shaving prisoners medication, food, clothing, shelter, or other of 'life's necessities[.]'")]. At this stage, the Court does not have to decide whether prison officials used excessive force to shave Plaintiff or what amount of force or other hypothetical deprivation rises to the level of an Eighth Amendment violation. Instead, the Court is only required to decide whether the alleged GDC practice of using excessive force places Plaintiff in imminent danger of serious physical injury. Because Plaintiff can avoid prison officials' application of force if he shaves himself, any danger presented by the GDC's practice of forcibly shaving prisoners does not warrant application of the § 1915(g) exception.

> b. *Prison Officials' Custom or Policy of Using Unsanitized Clippers Does Not Place Plaintiff in Imminent Danger of Serious Physical Injury*

Plaintiff also contends that prison officials' custom, policy, or practice of using improperly sanitized clippers places him in imminent danger of serious physical injury. Plaintiff argues that even if he could avoid any danger associated with prison officials' policy of forcibly shaving inmates, he cannot avoid the danger of being shaven with unsanitized clippers. *See* [Doc. 20 at p. 23 ("Regardless of whether Plaintiff complies with the grooming policy or not, he would still be shaven with unsanitized clippers.")]. Thus,

Plaintiff contends, he is still in imminent danger because he could contract a serious communicable disease as a result of exposure to unsanitized clippers. *See* [*id.*].

The Court has already addressed this contention and found that such allegations are too conclusory and speculative to invoke the § 1915(g) exception. *See* [Doc. 13 at pp. 12–14]. As previously noted, Plaintiff has been raising these same allegations for at least half a dozen years, but he has never contracted any disease as the result of being forcibly shaven. *See, e.g.*, [*id.* at p. 13]. Moreover, Plaintiff has not alleged any facts that could bolster his conclusory statement that he is in imminent danger of contracting a disease such as hepatitis or HIV. For example, Plaintiff does not assert that he was ever forcibly shaven after an inmate who had a communicable disease, identify any other similarly-situated inmate who contracted a communicable disease, describe an outbreak of a particular communicable disease at the prison, or explain how he knew that the clippers used to forcibly shave him were not properly sanitized.[5] At most, Plaintiff asserts that diseases such as HIV and hepatitis are "common in the prison population." [Doc. 1-1 at p. 12]; *see also* [Doc. 20 at pp. 21–22]. Plaintiff has been advised that this bare allegation is not enough to demonstrate that Plaintiff was in imminent danger of serious physical

---

[5] While it is true that Plaintiff avers, under penalty of perjury, that the clippers used to forcibly shave him were not sanitized and that the videotapes would "show that the clippers were not sanitized," [Doc. 20 at p. 24], it is still not clear to the Court how Plaintiff came to this realization or how the videotapes would show this. As in previous cases, Plaintiff does not allege "what he means" when he describes the clippers as unsanitized or provide facts that would show, for example, how often the clippers were used or by what number of inmates. *Daker*, 2017 WL 4448234, at *5. Plaintiff's generalized allegations are therefore too conclusory to permit the Court to determine that Plaintiff was in imminent danger of serious physical injury at the time the Complaint was filed in this case. *Id.*

injury. *Daker v. Dozier*, No. 6:17-cv-110, 2017 WL 4448234, at *5 (S.D. Ga. Oct. 5, 2017) (finding that "generalized and conclusory allegations that do not contain any specific facts that Plaintiff himself actually faces a real threat of physical injury" will not suffice to bring Plaintiff within § 1915(g)'s imminent danger exception); *Daker v. Robinson*, No. 1:16-CV-3917-RWS-JSA, 2016 WL 10720884, at *2 (N.D. Ga. Dec. 1, 2016) (finding that "any future risk of HIV, Hepatitis or other infectious diseases that [Plaintiff] argues could potentially result from the alleged unsanitized clippers is far to[o] speculative to satisfy § 1915(g)'s imminent danger exception"); *Daker v. Dozier*, No. 5:17-CV-0025-CAR, 2017 WL 3037420, at *5 (M.D. Ga. July 18, 2017) (finding that Plaintiff's contention that "he is in imminent danger due to the GDC's custom of supplying prisoners with damaged, unsanitary clippers to enforce its shaving policy" was insufficient to overcome § 1915(g) bar where "Plaintiff has faced this same 'danger' since 2012, and he does not now identify any presently occurring circumstance to suggest that this possible or potential danger is any more imminent now than it was in 2012"). Despite this admonition, Plaintiff continues to base his entitlement to the § 1915(g) exception on this allegation without even attempting to plead additional supporting facts. Thus, even if prison officials have a custom or policy of using clippers that have not been properly sanitized, Plaintiff has not shown that this custom or policy places him in imminent danger of serious physical injury.

### 3. Plaintiff Is Not Entitled to an Evidentiary Hearing

Plaintiff alternatively contends that he is entitled to an evidentiary hearing or discovery to demonstrate "that it is Defendants' policies and customs, rather than Plaintiff's actions, that create the ['imminent danger of serious physical injury'] situation." [Doc. 20 at p. 8]. Despite Plaintiff's assertions to the contrary, the Court has taken Plaintiff's factual allegations as true and construed them in his favor. There is accordingly no need for an evidentiary hearing. *Cf. Holly v. Wexford Health Servs., Inc.*, 339 F. App'x 633, 636–37 (7th Cir. 2009) (holding that plaintiff had "no right to an evidentiary hearing" on whether dismissal of complaint was appropriate pursuant to 28 U.S.C. § 1915(e)(2)(A) where plaintiff "had the opportunity in his brief to the district court to explain the discrepancies" in fee petitions but failed to "identify any material factual dispute warranting an evidentiary hearing").

## C. Conclusion

In sum, Plaintiff fails to establish any valid basis for reconsideration of the Court's Order denying his previous IFP Motion under the § 1915(g) exception and dismissing Plaintiff's Complaint without prejudice. Therefore, the Court **DENIES** Plaintiff's Motion to Vacate [Doc. 20] made pursuant to Rule 59(e)**.** Plaintiff is reminded that the Court's local rules prohibit the filing of motions to reconsider the Court's denial of a previous motion for reconsideration. LR 7.6, MDGa.

[*signature on following page*]

**SO ORDERED**, this 24th day of June, 2019.

<u>S/ Tilman E. Self, III</u>
**TILMAN E. SELF, III, JUDGE
UNITED STATES DISTRICT COURT**